When Recorded Mail to:
FIRST AMERICAN TITLE CO.
FAMS-DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-991

Document Prepared by:
Christi Sanders
MidFirst Bank
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118-6116
1-800-552-3000

  

Parcel # 1204120124

Tax ID# 1204120124

Please cross-reference to:  Instrument Number: 20160705-0032051,, NEW CASTLE  County
Delaware.

## LOAN MODIFICATION AGREEMENT
### FIXED RATE LOAN

This Loan Modification Agreement ("Agreement"), made by and between  **MARCUS A LITTLE & SHANYEL M GIBSON-LITTLE AKA SHANYEL GIBSON-LITTLE** ("Borrower")  and MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118  ("Lender") renews, amends, supplements and extends: (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") originated on 6/28/2016, recorded on 7/5/2016, in Instrument Number: 20160705-0032051,, in NEW CASTLE  County, Delaware  and (2) the Promissory Note ("Note") bearing the same date, in the original principal amount of $385,600.00 and secured by, the Security Instrument and other loan documents typically referred to as "addenda" or "riders" (collectively referred to herein as "Loan Documents"), which are secured by the real and personal property described in the Security Instrument, located at 604 WELLFLEET DRIVE, MIDDLETOWN, DE  19709-0000, the real property described being set forth as follows:

See Exhibit "A" attached hereto and made a part hereof.

*EXHIBIT "A"*

Borrower Initial Lines

*Please add the appropriate number of initial lines for each signatory over 4

Parcel # 1204120124

(Herein defined as "Property").

**Capitalized Amount: $0.00**

Borrower is in default or at imminent risk of default under the Loan Documents and desires (i) that the Lender forbear from exercising its rights under the Loan Documents, (ii) to extend or rearrange the time and manner of payment of the Note and other obligations due to Lender under the Loan Documents, and (iii) to extend and carry forward the lien(s) on the Property, whether created by the Security Instrument or otherwise. Lender, the legal holder entitled to enforce the Note and of the lien(s) securing the same, has agreed to Borrower's request to so forbear, to extend or rearrange the time and manner of payment of the Note, and to grant certain other financial accommodations pursuant to the terms of this Agreement.

In consideration of the mutual promises and agreements exchanged, and other good and valuable consideration paid by each of the parties to the other, the receipt and sufficiency of which is hereby acknowledged, the parties mutually agree to modify, renew and extend the Note and Security Instrument and any other Loan Documents, as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. **Acknowledgement of Unpaid Balance:**

    Borrower acknowledges that as of the date of the first payment due under this Agreement, Borrower owes Lender the unpaid balance of **$434,008.30 ("Unpaid Balance")**, in addition to the other fees, charges and expenses described in the section of the Agreement entitled "Acknowledgement of Unpaid Fees and Costs." The Unpaid Balance includes unpaid principal of $379,518.58, unpaid interest of $37,556.50, escrows advanced of $17,211.38, and certain unpaid fees of $0.00, less $278.16 in suspense funds.

    Borrower acknowledges that **$94,879.64** of the Unpaid Balance shall be paid by a new loan, extended to Borrower by Department of Housing and Urban Development ("HUD") according to the terms of HUD Partial Claim loan ("Partial Claim Loan") that is memorialized in a Partial Claim Promissory Note and Subordinate Mortgage/Deed of Trust between Borrower and HUD ("HUD Partial Claim Documents"). Borrower shall not be required to make monthly payments to HUD on the Partial Claim Loan but, rather, shall repay that amount to HUD according to the terms of the HUD Partial Claim Documents.

    After removal of the Partial Claim Loan amount from the Unpaid Balance, the amount owed by Borrower to Lender under the terms of this Agreement is **$339,128.66** ("Modified Principal Balance"). Borrower hereby renews, extends and promises to pay the Modified Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Modified Principal Balance until the full amount of the Modified Principal Balance and the other amounts due hereunder and under the Loan Documents have been paid in accordance with the terms and conditions of the Loan Documents, as

Borrower Initial Lines

*Please add the appropriate number of initial lines for each
signatory over 4

modified by this Agreement. All references in the Loan Documents to "Principal" shall be deemed to refer to the Modified Principal Balance.

2. **Acknowledgement of Unpaid Fees and Costs**:

Borrower agrees to remain responsible for payment of allowable costs and fees now due and owing ("Unpaid Fees and Costs") plus other allowable late charges, costs, fees and expenses incurred after this Agreement becomes effective (the total sum of which is referred to as "Fees and Costs"). Borrower agrees and acknowledges that Borrower received notice of Unpaid Fees and Costs due as of a date certain prior to execution of this Agreement.

Lender has agreed to postpone the collection of any outstanding Fees and Costs that are not paid in advance or that are not included in the Modified Principal Balance. Fees and Costs not included in the Modified Principal Balance remain due and owing as part of the debt secured by the Loan Documents to the extent provided in the Loan Documents and as otherwise permissible under applicable law. The outstanding Fees and Costs remain due and payable to Lender and shall be paid by Borrower, with interest, as permitted by the Loan Documents. Furthermore, outstanding Fees and Costs shall be payable to Lender on demand of Lender and shall be secured by the Security Instrument to the extent provided in the Security Instrument and otherwise permissible under applicable laws and requirements.

3. **Interest Calculation**:

Interest will be calculated at a fixed yearly interest rate of **3.750%**.

4. **Payment Amounts, Time of Payments and Maturity Date**:

a. Borrower acknowledges and agrees that Borrower shall, beginning on **4/1/2022**, through the Maturity Date, make monthly payments of U.S. **$1,570.56** for principal and interest and shall continue to make such payments in accordance with the terms and conditions set forth in the Loan Documents until the Modified Principal Balance is paid in full.

b. An escrow account has been established under the terms and conditions of the Loan Documents. Borrower will make an escrow payment each month on each payment due date. The escrow payment currently is **$675.91** per month, which is subject to change depending on the amounts attributable to taxes, insurance and other escrow items. **The present combined monthly payment and escrow payment will be $2,246.47**. The escrow payment will be re-analyzed from time to time in accordance with the terms of the Loan Documents to determine the appropriate escrow payment amount so that taxes, insurance, and other escrow items may be paid appropriately. The escrow payment amount will be combined with the monthly principal and interest payment amount.

Borrower Initial Lines

*Please add the appropriate number of initial lines for each signatory over 4

c.  The Maturity Date of the Loan is extended to **3/1/2052**. If Borrower still owes amounts to Lender on the Maturity Date, Borrower will pay these amounts in full on the Maturity Date.

5.  **Acknowledgment of Pre-Existing Conditions to Loan Modification:**

The Borrower acknowledges and agrees this Agreement is subject to the following conditions, which must exist at the time this Agreement is executed:

a.  All payments set forth in the Payment Schedule under the Loan Modification Trial Plan Agreement must have been made according to the Payment Schedule;
b.  The Property has no physical conditions that will adversely affect the Borrower's continued use of the Property or interfere with the Borrower's ability to make payments as required under this Agreement; and
c.  The Borrower (one or more) is occupying the Property as the Borrower's primary residence, unless occupancy by a Borrower is expressly not required by applicable Investor or Insurer guidance and program requirements; and
d.  The Lender remains in the first lien position and there are no outstanding liens and/or judgments against the Property; and
e.  If applicable, Bankruptcy Court approval; and
f.  If applicable, all requirements for an assumption of the loan are satisfied and Lender has approved the assumption.

The Borrower acknowledges and agrees that in the event the conditions set forth in this paragraph are not satisfied, this Agreement shall become null and void unless otherwise expressly agreed by Lender in writing. In the event this Agreement becomes null and void as set forth in this paragraph, Borrower acknowledges and agrees all provisions of the Loan Documents shall continue in full force and effect and Lender shall be under no obligation to modify any provision of the Loan Documents under this Agreement.

6.  **Place of Payment:**

Borrower agrees to make payments at the following address or such other place as the Lender may require upon written notice to Borrower:

Midland Mortgage - A Division of MidFirst Bank
Attn: Cashiers
P.O. Box 268888
Oklahoma City, OK  73126-8888

7.  **Adjustable Rate Loan Provisions in Note:**

If the interest rate in the Interest Calculation section of this Agreement is calculated as provided in the Note, any rate and payment adjustment provisions in the Note will apply. If the interest rate in the Interest Calculation section of this Agreement is fixed, any rate and payment adjustment provisions in the Note will not apply.

Borrower Initial Lines

*Please add the appropriate number of initial lines for each signatory over 4

8. **Sale or Transfer of Property by Borrower:**

   a. If all or any part of the Property or any interest in it is sold or transferred (or, if Borrower is not a natural person, any beneficial interest in Borrower is sold or transferred) without the Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

   b. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of the designated period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

9. **Compliance with Loan Documents:**

   Borrower represents that, except for the payments described in this Agreement, Borrower is in full compliance with the covenants in the Loan Documents and that all of the representations and warranties contained in the Loan Documents are true, correct or satisfied as of the effective date of this Agreement.

10. **Renewal and Extension:**

    It is the intention of the parties that all liens and security interests described in the Loan Documents are hereby renewed and extended until the Modified Principal Balance and other obligations to Lender, have been fully paid. Borrower and Lender acknowledge and agree that the extension, amendment, modification or rearrangement effected by this Agreement shall in no manner affect or impair the Note or the liens and security interests securing the Note. The parties mutually agree that the purposes of this Agreement is to extend, modify, amend or rearrange the time and manner of payment of the Loan Documents and the indebtedness evidenced thereby, and to carry forward all liens and security interests (including, if applicable, any and all vendor's liens), which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect to fully secure the payment of the Note.

11. **No Waiver of Lender's Rights Regarding Default:**

    All the rights, remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents also shall apply to default in the making of the modified payments hereunder. Nothing contained herein shall be deemed to be a waiver by Lender of any terms or conditions of the Loan Documents as modified by this Agreement. This Agreement shall in no way be deemed to be a waiver of Lender's rights and remedies by reason of any default by Borrower under the Loan Documents as herein modified, including without limitation future payment defaults. Nothing in this Agreement shall constitute an agreement by Lender to

Borrower Initial Lines

*Please add the appropriate number of initial lines for each signatory over 4

any future modification of the Loan Documents and Lender expressly reserves the right to refuse to agree to any future modifications.

## 12. Bankruptcy:

If, since inception of this loan through date of this Agreement, Borrower has received a discharge in a Chapter 7 bankruptcy and there has been no valid reaffirmation of the underlying debt, the Lender is not attempting to re-establish any personal liability on the underlying debt by entering into this Agreement. The parties acknowledge that Lender retains certain rights, including but not limited to, the right to foreclose its interest in the property under appropriate circumstances. The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its right and pursuing its remedies under the Security Instrument as a result of Borrower's default. The parties agree that if approval of this Agreement by the Bankruptcy Court is required and not received, this Agreement shall be null and void and of no further force or effect.

## 13. Loan Documents Remain In Full Force and Effect:

The provisions of the Loan Documents, as amended by this Agreement, shall continue in full force and effect, and Borrower acknowledges and reaffirms Borrower's liability to Lender under the Loan Documents, subject to the terms of the Bankruptcy section of this Agreement. In the event of any inconsistency between this Agreement and the terms of the Loan Documents, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a novation, satisfaction or release, in whole or in part, of the Loan Documents. Except as otherwise specifically provided in this Agreement, the Loan Documents remain unchanged, and Borrower and Lender are bound and must comply with all of the terms and provisions of the Loan Documents, except as amended by this Agreement.

## 14. Execution of Additional Documentation:

Borrower agrees to make and execute other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement, which if approved and accepted by Lender, shall be incorporated into this Agreement and shall bind and inure to Borrower's heirs, executors, administrators, and assigns.

## 15. Miscellaneous:

a. Lender does not, by execution of this Agreement, waive any rights it may have against any person not a party to the Agreement.

b. If any court of competent jurisdiction shall declare any provision of this Agreement to be invalid, to any extent, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect to bind the parties.

Borrower Initial Lines

*Please add the appropriate number of initial lines for each
signatory over 4

c. This Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

d. This Agreement shall be governed by the laws of the state where the Property is located.

**16. <u>Effective Date:</u>**

This Agreement is effective upon the execution of this Agreement by Lender and Borrower.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS LOAN MODIFICATION AGREEMENT, TOGETHER WITH THE LOAN DOCUMENTS AND ANY EXHIBITS AND SCHEDULES THERETO, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND CONTROL OVER ALL PRIOR NEGOTIATIONS, AGREEMENTS AND UNDERTAKINGS BETWEEN THE PARTIES WITH RESPECT TO SUCH MATTER. ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN AGREEMENT MAY BE LEGALLY ENFORCED. THIS LOAN MODIFICATION AGREEMENT MAY BE AMENDED OR CHANGED ONLY BY A WRITTEN INSTRUMENT EXECUTED BY THE PARTIES OR THEIR AUTHORIZED ASSIGNEES.**

BORROWER

*Marcus A. Little*

MARCUS A LITTLE

*Shanyel Gibson - Little*

SHANYEL M GIBSON-LITTLE AKA
SHANYEL GIBSON-LITTLE

Acknowledgement

STATE OF ~~Delaware~~ PA                    )
                                           ) SS:
COUNTY OF ~~NEW CASTLE~~ Phila             )

On the 4th day of April , 2022, before me, the undersigned, a notary public in and for said state, personally appeared **MARCUS A LITTLE & SHANYEL M GIBSON-LITTLE AKA SHANYEL GIBSON-LITTLE**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

> Commonwealth of Pennsylvania - Notary Seal
> MICHELLE N WALKER - Notary Public
> Philadelphia County
> My Commission Expires Aug 23, 2022
> Commission Number 1281089

*Michelle Walker*
Notary Public

*Michelle Walker*
Printed name of notary

County of Residence: Phila

Commission Number: 1281089

My Commission Expires: 8/23/22

**LENDER**

**MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118**

_____

**Vice President, MidFirst Bank**

_____

**Printed Name**

### Acknowledgement

STATE OF OKLAHOMA      )
                              ) SS:
COUNTY OF OKLAHOMA   )

On the _____ day of _____, 20___, before me, the undersigned, a notary public in and for said state, personally appeared _____, who acknowledged himself/herself/themselves to be a Vice President of MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118, and who is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity as Vice President of MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118, and that by his/her/their signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

_____           County of Residence: _____

**Notary Public**

_____           My Commission Expires: _____

**Printed Name of Notary**

## Exhibit "A"

DESCRIPTION OF PROPERTY SITUATE IN RED LION HUNDRED, NEW CASTLE
COUNTY, STATE OF DELAWARE, BEING LOT NO. 316, AS SHOWN ON THE RECORD
RESUBDIVISION PLAN FOR "CROSSLAND",PREPARED BY KARINS AND ASSOCIATES,
PROFESSIONAL ENGINEERS AND LAND SURVEYORS, DRAWING NO 2065/A01-RESUB,
CONSISTING OF 13 SHEETS, DATED FEBRUARY 16, 2012, RECORDED MARCH 5, 2013 IN
THE OFFICE OF THE RECORDER OF DEED IN AND FOR NEW CASTLE COUNTY ON
INSTRUMENT NO 20130305-0014485. BEING MORE PARTICULARLY BOUNDED AND
DESCRIBED AS FOLLOWS TO WIT:
BEGINNING AT A POINT ON THE NORTHWESTERLY SIDE OF WELLFLEET DRIVE (36'
WIDE R/W), A CORNER IN COMMON FOR HEREIN DESCRIBED LOT WITH LOT 315, SAID
POINT BEING FURTHER LOCATED FROM THE SOUTHWESTERLY END OF A 25.00 FEET
RADIUS JUNCTION CURVE JOINING SAID NORTHWESTERLY SIDE OF WELLFLEET
DRIVE WITH THE SOUTHWESTERLY SIDE OF AFTON DRIVE (36' WIDE R/W); BY THE
FOLLOWING DESCRIBED COURSE AND DISTANCE ALONG THE SAID NORTHWESTERLY
SIDE OF WELLFLEET DRIVE; SOUTH 79°-26'-05" WEST, 111.00 FEET TO THE POINT AND
PLACE OF BEGINNING; THENCE, FROM SAID POINT OF BEGINNING, CONTINUING
ALONG THE SAID NORTHWESTERLY SIDE OF WELLFLEET DRIVE, SOUTH 79°-26'-05"
WEST, 60.00 FEET TO A CORNER IN COMMON WITH LOT 317; THENCE, LEAVING THE
SAID NORTHWESTERLY SIDE OF WELLFLEET DRIVE, ON A LINE IN COMMON WITH SAID
LOT 317, NORTH 10°-33'-55" WEST, 115.00 FEET TO A LINE IN COMMON WITH LANDS
DESIGNATED "PRIVATE OPEN SPACE 8C - NATURAL RESOURCE AREA (3.89 ACS.)";
THENCE, THEREBY, NORTH 79°-26'-05" EAST, 60.00 FEET TO A CORNER IN COMMON
WITH AFORESAID LOT 315; THENCE, ON A LINE IN COMMON WITH SAID LOT 315,
SOUTH 10°-33'-55" EAST, 115.00 FEET TO THE POINT AND PLACE OF BEGINNING.
CONTAINING WITHIN SAID DESCRIBED METES AND BOUNDS 0.16 ACRES OF LAND, BE
THE SAME MORE OR LESS.
PROPERTY SUBJECT TO A 15 FOOT WIDE PERMANENT CONSTRUCTION/UTILITY
EASEMENT AS SHOWN ON SAID RECORD RESUBDIVISION PLAN FOR "CROSSLAND".
PROPERTY FURTHER SUBJECT TO AND BENEFITING FROM ANY AND ALL APPLICABLE
EASEMENTS, RIGHTS OF WAY, RESERVATIONS AND RESTRICTIONS AS SHOWN OR
NOTED ON SAID RECORD RESUBDIVISION PLAN FOR "CROSSLAND".

**Parcel #** 1204120124

**Tax ID#** 1204120124

When Recorded Mail to:
FIRST AMERICAN TITLE CO.
FAMS-DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-991

Document Prepared by:
Christi Sanders
Midland Mortgage - A Division of MidFirst Bank
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118-6116
1-800-552-3000

FHA Case Number: **071-1661256703**

## SUBORDINATE OPEN-END MORTGAGE

THIS SUBORDINATE OPEN-END MORTGAGE ("Security Instrument") is given on **February 21, 2022**. The mortgagors are **MARCUS A LITTLE & SHANYEL M GIBSON-LITTLE AKA SHANYEL GIBSON-LITTLE** whose address is **604 WELLFLEET DRIVE MIDDLETOWN, DE 19709-0000** ("Borrower"). This Security Instrument is given to the **Secretary of Housing and Urban Development,** which is organized and existing under the laws of the United States of America, and whose address is **451 Seventh Street, SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **ninety-four-thousand-eight-hundred-seventy-nine dollars and sixty-four cents (US $94,879.64)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on 3/1/2052. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums advanced under to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and Lender's successors and assigns the following described property located in **NEW CASTLE** County, Delaware:

**See Exhibit A attached hereto and made a part hereof;**

Page 1 of the Subordinate Mortgage

Borrower Initial Lines

 

* Please add the appropriate number of initial lines for each signatory
over 4

**Tax ID # 1204120124**

which has the address of: **604 WELLFLEET DRIVE MIDDLETOWN, DE   19709-0000**
("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal.**

   Borrower shall pay when due the principal of the debt evidenced by the Note.

2. **Borrower Not Released; Forbearance By Lender Not a Waiver.**

   Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.**

   The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the

Borrower Initial Lines

* Please add the appropriate number of initial lines for each signatory
over 4

terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the note without that Borrower's consent.

4. **Notices.**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Notice to any one Borrower shall serve as notice to all Borrowers unless state law expressly prohibits same. Any notice to Lender shall be given by first class mail to: **Department of Housing and Urban Development, Attn: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 20410 or any address Lender designates** by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5. **Governing Law; Severability.**

This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of the Security Instrument and the Note are declared to be severable.

6. **Borrower's Copy.**

Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

7. **Acceleration; Remedies.**

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by

Borrower Initial Lines

* Please add the appropriate number of initial lines for each signatory over 4

applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under the Paragraph 7 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 USC 3751 et seq) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.**

8. **Release.**

   Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

9. **Waivers.**

   Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

Page 4 of the Subordinate Mortgage

Borrower Initial Lines

* Please add the appropriate number of initial lines for each signatory
over 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.  IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

BORROWER

_Marcus A Little_
MARCUS A LITTLE

_Shanyel Gibson-Little_
SHANYEL M GIBSON-LITTLE AKA
SHANYEL GIBSON-LITTLE

Acknowledgement

STATE OF ~~Delaware~~ PA                    )
                                           ) SS:
COUNTY OF ~~NEW CASTLE~~ Phila             )

On the _____ day of _____, 20___, before me, the undersigned, a notary public in and for said state, personally appeared **MARCUS A LITTLE & SHANYEL M GIBSON-LITTLE AKA SHANYEL GIBSON-LITTLE**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

Commonwealth of Pennsylvania - Notary Seal
MICHELLE N WALKER - Notary Public
Philadelphia County
My Commission Expires Aug 23, 2022
Commission Number 1281089

_Michelle Walker_
Notary Public

_Michelle Walker_
Printed name of notary

County of Residence: _Phila_

Commission Number: _1281089_

My Commission Expires: _8/23/22_

Page 5 of the Subordinate Mortgage

## Exhibit "A"

DESCRIPTION OF PROPERTY SITUATE IN RED LION HUNDRED, NEW CASTLE COUNTY, STATE OF DELAWARE, BEING LOT NO. 316, AS SHOWN ON THE RECORD RESUBDIVISION PLAN FOR "CROSSLAND",PREPARED BY KARINS AND ASSOCIATES, PROFESSIONAL ENGINEERS AND LAND SURVEYORS, DRAWING NO 2065/A01-RESUB, CONSISTING OF 13 SHEETS, DATED FEBRUARY 16, 2012, RECORDED MARCH 5, 2013 IN THE OFFICE OF THE RECORDER OF DEED IN AND FOR NEW CASTLE COUNTY ON INSTRUMENT NO 20130305-0014485. BEING MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS TO WIT:

BEGINNING AT A POINT ON THE NORTHWESTERLY SIDE OF WELLFLEET DRIVE (36' WIDE R/W), A CORNER IN COMMON FOR HEREIN DESCRIBED LOT WITH LOT 315, SAID POINT BEING FURTHER LOCATED FROM THE SOUTHWESTERLY END OF A 25.00 FEET RADIUS JUNCTION CURVE JOINING SAID NORTHWESTERLY SIDE OF WELLFLEET DRIVE WITH THE SOUTHWESTERLY SIDE OF AFTON DRIVE (36' WIDE R/W); BY THE FOLLOWING DESCRIBED COURSE AND DISTANCE ALONG THE SAID NORTHWESTERLY SIDE OF WELLFLEET DRIVE; SOUTH 79°-26'-05" WEST, 111.00 FEET TO THE POINT AND PLACE OF BEGINNING; THENCE, FROM SAID POINT OF BEGINNING, CONTINUING ALONG THE SAID NORTHWESTERLY SIDE OF WELLFLEET DRIVE, SOUTH 79°-26'-05" WEST, 60.00 FEET TO A CORNER IN COMMON WITH LOT 317; THENCE, LEAVING THE SAID NORTHWESTERLY SIDE OF WELLFLEET DRIVE, ON A LINE IN COMMON WITH SAID LOT 317, NORTH 10°-33'-55" WEST, 115.00 FEET TO A LINE IN COMMON WITH LANDS DESIGNATED "PRIVATE OPEN SPACE 8C - NATURAL RESOURCE AREA (3.89 ACS.)"; THENCE, THEREBY, NORTH 79°-26'-05" EAST, 60.00 FEET TO A CORNER IN COMMON WITH AFORESAID LOT 315; THENCE, ON A LINE IN COMMON WITH SAID LOT 315, SOUTH 10°-33'-55" EAST, 115.00 FEET TO THE POINT AND PLACE OF BEGINNING. CONTAINING WITHIN SAID DESCRIBED METES AND BOUNDS 0.16 ACRES OF LAND, BE THE SAME MORE OR LESS.

PROPERTY SUBJECT TO A 15 FOOT WIDE PERMANENT CONSTRUCTION/UTILITY EASEMENT AS SHOWN ON SAID RECORD RESUBDIVISION PLAN FOR "CROSSLAND". PROPERTY FURTHER SUBJECT TO AND BENEFITING FROM ANY AND ALL APPLICABLE EASEMENTS, RIGHTS OF WAY, RESERVATIONS AND RESTRICTIONS AS SHOWN OR NOTED ON SAID RECORD RESUBDIVISION PLAN FOR "CROSSLAND".

**Parcel #** 1204120124

**Tax ID#** 1204120124

FHA Case Number 071-1661256703

 

### PROMISSORY NOTE

Date:                    February 21, 2022
Property Address:        604 WELLFLEET DRIVE
                         MIDDLETOWN, DE  19709-0000

### 1. <u>Parties</u>

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

### 2. <u>Borrower's Promise to Pay</u>

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ninety-four-thousand-eight-hundred-seventy-nine dollars and sixty-fourcents** (US **$94,879.64**) to the order of the Lender.

### 3. <u>Promise to Pay Secured</u>

Borrower's promise to pay is secured by a mortgage, deed of trust, or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. <u>Manner of Payment</u>

   A.  Time -

       On **3/1/2052** or, if earlier, when the first of the following events occurs:

            i.      Borrower has paid in full all amounts due under the primary Note and
                    related mortgage, deed of trust or similar Security Instruments insured by
                    the Secretary, or
            ii.     The maturity date of the primary Note has been accelerated, or
            iii.    Borrower has transferred title to the Property by sale, or
            iv.     The primary Note and related mortgage, deed of trust, or similar Security
                    Instrument are no longer insured by the Secretary.

   B.  Place -

       Payment shall be made at the Office of Housing FHA-Comptroller, Director of
       Mortgage Insurance Accounting and Servicing, ISN Corporation - Western

Operations Center Attention: Secretary-Held Loan Servicing 2000 N Classen Blvd Suite #3200 Oklahoma City, OK 73016 or any such other place as Lender may designate in writing by notice to Borrower.

C.  Default -

If Borrower does not pay the amount due as set forth in this paragraph, Borrower will be in default. If Borrower is in default, the Lender may require immediate payment of the full amount due which has not been paid without any further notice.

D.  No Waiver by Lender -

Even if, at a time when Borrower is in default, Lender does not require immediate payment in full, Lender will still have the right to do so if Borrower is in default at a later time.

E.  Payment of Lenders Costs and Expenses -

If Lender has required Borrower to pay immediately in full, Lender will have the right to require Borrower to pay Lender for all costs and expenses in enforcing this Note to extent not prohibited by applicable law. Such expenses include but are not limited to, reasonable attorney fees.

## 5. <u>Borrower's Right to Prepay</u>

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. <u>Waivers</u>

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of the amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 7. <u>Obligations of Persons Under This Note</u>

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower(s) accepts and agrees to the terms and covenants contained in this Note.

BORROWER

_Marcus A. Little_

**MARCUS A LITTLE**

DATE    4-4-22

_Shanyel M Gibson-Little_

**SHANYEL M GIBSON-LITTLE AKA
SHANYEL GIBSON-LITTLE**

DATE    4-4-22



**MIDLAND MORTGAGE**

*A division of MidFirst Bank*

February 21, 2022

MARCUS A LITTLE & SHANYEL M GIBSON-LITTLE
AKA SHANYEL GIBSON-LITTLE
604 WELLFLEET DRIVE
MIDDLETOWN, DE  19709-0000

### ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of Lender, as that term is defined in the Loan Modification Agreement, agreeing to modify the referenced loan ("Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to service the loan according to the terms of any servicing agreement, or otherwise sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs any municipal bond authority, or any other investor.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

BORROWER

| | |
|---|---|
| *Marcus A. Little* | 4-4-22 |
| MARCUS A LITTLE | DATE |
| *Shanyel M Gibson-Little* | 4-4-22 |
| SHANYEL M GIBSON-LITTLE AKA SHANYEL GIBSON-LITTLE | DATE |

Loan ID: 9165



**/// MIDLAND MORTGAGE**

*A division of MidFirst Bank*

### CERTIFICATION OF CONDITION

Loan Number:    57239165

Property Address:    604 WELLFLEET DRIVE
MIDDLETOWN, DE  19709-0000

By signing this, I (we) certify that the property located at the address identified above, which is the subject of the loan referenced above, has no physical conditions that will adversely affect the continued use of the property or interfere with my (our) ability to maintain the monthly mortgage payments.

BORROWER

_____    _____
MARCUS A LITTLE                                         DATE    4-4-22

_____    _____
SHANYEL M GIBSON-LITTLE AKA                DATE    4-4-22
SHANYEL GIBSON-LITTLE

Loan ID: 9165